**UNITED STATES of America**
v.
**Atha N. HENSON, Edward J. Skeens.**
**Misc. No. 28–59.**

United States District Court
District of Columbia.
Nov. 16, 1959.
Memorandum Dec. 15, 1959.

Aubrey E. Robinson, Jr., Washington, D. C., for respondent Henson.

Respondent Skeens pro se.

Edward P. Troxell, Principal Asst. U. S. Atty., Washington, D. C., for the United States (representing court).

Petition of the United States Attorney for Rule to Show Cause

To the Chief Judge and the Associate Judges of the United States District Court for the District of Columbia.

The United States Attorney for the District of Columbia upon information and belief informs the Court that on October 6, 1959, the trial of the case of United States v. Willie Hayes, et al., Criminal No. 769–59, began in the United States District Court for the District of Columbia, Judge Luther W. Youngdahl presiding; that one Jesse C. Brown was a defendant in the case; that Jesse C. Brown was represented by Attorney Edward J. Skeens; that a jury was selected to try the case; that one of the members of the jury was Atha N. Henson; that prior to the selection of the jury and during the *voir dire* examination Government counsel, after identifying the case, inquired of the jury panel whether any of its members had any knowledge of the facts of the case; that the answer of all the members of the panel by their silence was in the negative; that in truth and in fact the aforementioned Atha N. Henson had knowledge of the facts of the case, at least as they pertain to defendant Jesse C. Brown; that the said Atha N. Henson was informed of those facts by the mother of the defendant Jesse C. Brown, Vina Smith, on or about September 30, 1959; that after she became aware that Atha N. Henson was seated on the jury, the aforesaid Vina Smith did not inform the Court or the Assistant United States Attorney prosecuting the case that that jury member knew the facts of the case before the trial; that the said Vina Smith did inform Edward J. Skeens during the trial that Atha N. Henson, knew the facts of the case before the trial; that the said Edward J. Skeens being an officer and attorney of the Court and as such being obligated to inform the Court of such knowledge if brought to his attention, failed knowingly and willfully during the course of the trial to inform the Court that he had been advised by Vina Smith that she had discussed the facts of the case before the trial with Atha N. Henson, the aforementioned juror; that it was not known to the Assistant United States Attorney prosecuting the case nor to the Court that Atha N. Henson had knowledge of the facts of the case prior to the trial; and that the said Atha N. Henson, knowing full well that she had knowledge of the facts of the case and that she had incorrectly answered the questions propounded to her during the *voir dire* examination, permitted herself to be seated as a juror and sat and acted as such throughout the entire proceeding of the case.

In acting as hereinbefore alleged, Atha N. Henson, and Edward J. Skeens, intentionally and willfully misbehaved in the presence of this Court, and conducted themselves in a manner contemptuous of this Court in the presence of this Court, and misbehaved and acted in a manner contemptuous of this Court so near the Court as to obstruct the administration of justice.

Wherefore, the United States Attorney prays that proceedings may be had against the said Atha N. Henson and Edward J. Skeens, and a Rule to Show Cause issue upon them requiring them to appear in this Court and show cause why they should not be adjudged in criminal contempt of Court and punished accordingly.

/s/ Oliver Gasch ·
—————————————
Oliver Gasch
United States Attorney

/s/ Francis J. Wilson
—————————————
Francis J. Wilson
Assistant United States Attorney

District of Columbia: ss

"Francis J. Wilson, being first duly sworn according to law on oath, deposes and says that he is an Assistant United States Attorney and that he has read the foregoing petition by him subscribed and verily believes it to be true.

/s/ Francis J. Wilson
—————————————
Francis J. Wilson
Assistant United States Attorney

Subscribed and Sworn to before me this 16th day of November, 1959.

/s/ Mildred Wall
—————————————
Notary Public, D. C.

YOUNGDAHL, District Judge.

### Rule to Show Cause

Upon consideration of the petition of the United States Attorney filed in the above-entitled cause on the 16th day of November, 1959, it is by the Court this 16th day of November, 1959,

Adjudged and Ordered, that the above named Atha N. Henson and Edward J. Skeens appear before me in the United States District Court for the District of Columbia on the 10th day of December, 1959, and show cause, if any they have, why they should not be adjudged in criminal contempt of court and punished accordingly as prayed in the said petition; provided that a copy of the said petition containing the essential facts constituting the criminal contempt charge, which is by reference made a part hereof, and a copy of this order be served upon the said Atha N. Henson and Edward J. Skeens not later than the 23d day of November, 1959.

### Memorandum

This is a proceeding by the United States based upon a petition of the United States Attorney for a rule to show cause why the respondents should not be found guilty of criminal contempt. 18 U.S.C. § 401; Federal Rule of Criminal Procedure 42(b), 18 U.S.C.

On October 6 and 7, 1959, I presided over the jury trial of one Jesse C. Brown. Brown was indicted for robbery and the jury returned a verdict of guilty as charged.[1]

Several days later, Brown's mother, Mrs. Vina Smith, contacted the Assistant United States Attorney who prosecuted her son's case and told him that a few days before the trial, she had discussed the facts of the crime with Atha N. Henson, one of the jurors in the case. The discussion took place, Mrs. Smith said, when Mrs. Henson came to have her hair dressed at Mrs. Smith's beauty shop. Furthermore, said Mrs. Smith, she told her son's attorney, Edward J. Skeens, during the trial that Mrs. Henson knew the facts of the case prior to the trial.[2]

At the trial, Mrs. Smith had testified on behalf of the defendant. At no time prior to the verdict was the Court informed of any of the above occurrences.

Because the nature of the charges cuts so deeply into the heart's core of our judicial system, the Court considered a full airing of the situation to be essential to the fair administration of justice and to all concerned. Accordingly, it executed the rule to show cause.

This being a criminal contempt proceeding, the standard of proof prerequisite to a conviction is that of "beyond a reasonable doubt".[3] With that hurdle before it, the Court is in doubt whether respondent Henson was informed of the facts in the impending trial by Mrs. Smith either orally or by being shown the newspaper clipping; and further, the Court is in doubt as to whether Mrs. Smith informed respondent Skeens that she had discussed the case with Mrs. Henson. Therefore, the Court concludes only as much as stands admitted by the respondents, as follows:

1. Mrs. Smith informed respondent Skeens at the close of the case, but while the jury was deliberating, that she knew one of the jurors; this information was imparted at the rear of the courtroom;

2. Respondent Henson recognized Mrs. Smith as the beautician who had done her hair on at least two occasions when Mrs. Smith took the witness stand

---

1. United States v. Brown, D.C., 179 F. Supp. 478.

2. For a fuller statement, see the petition of the United States Attorney.

3. For example: "[I]t is certain that in proceedings for criminal contempt the defendant is presumed to be innocent, he must be proved to be guilty beyond a reasonable doubt, and cannot be compelled to testify against himself." Gompers v. Buck's Stove & Range Co., 1911, 221 U.S. 418, 444, 31 S.Ct. 492, 499, 55 L.Ed. 797.

and she (Mrs. Henson) then realized that Mrs. Smith's son was the defendant, Jesse Brown.

3. The Court was not informed of the above by either of the respondents.[4]

 On these facts alone, the Court concludes that both respondents are guilty of criminal contempt. Both respondents were obligated by force of their oaths and consequent responsibilities to immediately inform the Court of the information they had obtained during the trial.

Mrs. Smith's statement—even if said "in passing", as characterized by respondent Skeens—was far too suggestive to ignore. Particularly is this so when it is realized that Skeens could not have been certain an "acquaintance" was all that was involved—he did not carefully inquire of Mrs. Smith the precise nature of her relationship with the juror, Mrs. Henson. To make matters worse, an obvious opportunity to inform the Court later presented itself when, during its deliberations, the jury requested the Court to repeat certain parts of the charge and the Court conferred with counsel about the request. This was after Mrs. Smith had testified, of course, and after respondent Skeens' conversation with Mrs. Smith at the rear of the courtroom, and consequently at a time when Skeens knew the juror, Mrs. Henson, had not informed the Court of her knowledge. Even if *he* thought the relationship too inconsequential to mention—what reason could he assign to her (Mrs. Henson's) silence? Could he rightfully assume that *she* also considered the relationship too slight to mention? There was no basis for such an assumption and even if there were, a duty existed to inform the Court so that *it* could inquire into the actual relationship and the effect upon the trial.

Clearly, Mrs. Henson was required to inform the Court of her prior relationship with the defendant's mother. Such an obvious duty cannot be excused away as the neglect of a woman unsophisticated in the ways of the court. Neither can it be justified as stemming from diffidence towards disturbing the progress of the trial since a whispered aside to the ever-present marshal would have sufficed. Moreover, Mrs. Henson knew at a time when the Court could have solved the problem by simply excusing Mrs. Henson and appointing an alternate in her place. Thus a new trial would not have been necessary had she but come forward at any time before the jury retired for its deliberations.

Judge Vogel has stated that

"The jury system has been one of the greatest bulwarks in the defense of individual freedom. Its adoption marked a tremendous step forward in the protection of the individual from the whims of an all-powerful state and its arbitrary judges. The effectiveness of its operation depends upon the courage, the honesty and the intelligence of the individuals who make up our juries. The jury system as it has operated in the past has been a matter of pride to the judges and members of the bar of this court. It has had and justly earned the respect of the general public." United States v. Freedland, D.C.S.E.N.D.1953, 111 F.Supp. 852, 856.

We can assure the retention of this respect only if an atmosphere of unbiased and scrupulous honesty can be easily attributed to the deliberations and decision of the jury. In turn, this is possible only if we maintain a constant vigilance over the source and nature of all information imparted to our jurors.

---

4. The Court was first made aware of the above and the other—and more extensive —allegations when the Assistant United States Attorney brought the matter to chambers several days after the jury returned its verdict.